UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| C.P. | : |
| *Plaintiff*, | : |
| | : C.A. NO.: |
| VS. | : |
| | : |
| | : |
| Town of North Smithfield School Department, | : |
| by and through its Finance Director, | : |
| Anthony St. Onge; and Timothy McGee, | : |
| Individually and in his official capacity as | : |
| Principal of North Smithfield High School; | : |
| and Steven Boss, Individually and in his official | : |
| capacity as Vice Principal of North Smithfield | : |
| High School | : |
| *Defendants*. | : |

**Plaintiff's Complaint**

**I. Nature of Action**

1.      This is an action for damages on behalf of a citizen of the United States. Because of the nature of her allegations, and her legitimate need for and right of privacy, Plaintiff files this complaint pseudonymously.

2.      Plaintiff has duly notified the Town of North Smithfield ("the Town") of her claim pursuant to R.I. Gen. Laws § 45-15-5.

3.      This action arises out of a sexual assault suffered by C.P. while she was enrolled in North Smithfield High School ("the School"), which is operated by the Town through its Department, North Smithfield School Department ("the School Department"), and the subsequent verbal abuse and threats C.P. endured while a student at North Smithfield High School.

4.      C.P. seeks damages and other relief pursuant to 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1971, 20 U.S.C.S. §§ 1681-1688 [hereinafter, "Title IX"],

as well as provisions of the common law.

## II. Parties

5.      C.P. is a legal adult who reached the age of majority on July 22, 2021, and brings the claim for injuries she suffered as a minor as a result of the misconduct of the Town, McGee, and Boss.

6.      At all times throughout her ages of public-school eligibility, C.P. and her parents were residents of the Town.

7.      The Town is a municipal corporation, duly organized under the laws of the State of Rhode Island, and is sued through its Finance Director, Anthony St. Onge, pursuant to R.I General Laws § 45-15-4.

8.      Defendant Timothy McGee ("McGee"), at all times relevant hereto, was employed by the Town and/or the School Department and/or the School as Principal of the School.

9.      Defendant Steven Boss ("Boss"), at all times relevant hereto, was employed by the Town and/or the School Department and/or the School as Vice Principal of the School.

## III. Jurisdiction

10.      Jurisdiction is vested in this Court due to the federal questions presented by C.P.'s claims arising under the Constitution and laws of the United States pursuant to 28 U.S.C. § 1331.

11.      The court has supplemental jurisdiction over C.P.'s state law claims pursuant to 28 U.S.C. § 1367.

12.      At all times material hereto, Defendants acted pursuant to or under color of state

law within the meaning of 42 U.S.C. § 1983.

13.    At all times material hereto, Defendants received federal funds for the provision of educational services and programs provided by the School.


## IV. Venue

14.    Venue lies properly in the District of Rhode Island because all parties are located therein and because the acts and omissions giving rise to this action occurred therein.

## V. Facts

### *Notice*

15.    Upon information and belief, during the 2017-2018 school year and prior to November 6, 2017, administrators at the School, including McGee and Boss, were aware of at least one previous sexual assault committed by a male student ("the Assailant") upon a female student that occurred on school premises and were in communication with the North Smithfield Police Department regarding the conduct of the Assailant with regard to sexual assault and other unlawful activity occurring on school premises.

16.    During the 2017-2018 school year and prior to November 6, 2017, the Assailant was a student enrolled at the School.

17.    Upon information and belief, despite the knowledge of the Assailant's assault(s) and other unlawful activity during the 2017-2018 school year and prior to November 6, 2017 by the Town, through administrators at the School, including McGee and Boss, the Assailant was permitted to continue his enrollment at the School.

18.    Upon information and belief, the School disciplined the Assailant for his conduct during the 2017-2018 school year and prior to November 6, 2017 by precluding his

further participation in the School's football team but nevertheless allowed him to be present on school premises, unsupervised, during the academic school day and regular after school hours.

19.    Upon information and belief, the School, McGee, and Boss failed to warn students and parents of the assault by the Assailant that took place on its premises during the 2017-2018 school year and prior to November 6, 2017.

20.    Upon information and belief, the Assailant enrolled at the School to commence his studies in the 2017-2018 school year with a record from his previous school of having committed a previous sexual assault on another female student, and the School, McGee, and Boss were aware of the previous sexual assault(s) committed by the Assailant at all times that the Assailant was a student at the School.

21.    No warning was provided by the School, McGee, or Boss to students or parents regarding the conduct, including the sexual assaults, by the Assailant during the 2017-2018 school year and prior to November 6, 2017, despite their knowledge of the danger that he posed to other students.

### The Assault

22.    On November 6, 2017, the Assailant sexually assaulted C.P. inside the School during school hours when both the Assailant and C.P. had the permission of the school to be on the premises (hereinafter "the Assault").

23.    C.P. was present at the School after her final class to utilize the library because her school-issued Chromebook was being serviced.  She was instructed by the School, through its agent Amy Gravel, a teacher at the School, to report to the library immediately following her final class to use a library Chromebook to complete an

4

assignment for Ms. Gravel's class while her school-issued Chromebook was unavailable to her.

24.     Upon information and belief, the Assailant was present at the school with school permission and without supervision.

25.     The Assault occurred when C.P. encountered the Assailant while she was walking to use the restroom after class, prior to reporting to the library to complete her homework.

26.     School personnel were on premises facilitating after school activities, and C.P. had a reasonable expectation of adequate supervision and safety during the entirety of her time on school grounds on the day of the Assault.

27.     Upon information and belief, the Assault took place in the same or similar location of the school building where the prior sexual assault(s) committed by the Assailant had occurred, which were known to the Town, through its agents McGee, Boss and other administrators of the School.

28.     The Town, through its agent Boss and other administrators of the School, had notice of the Assailant's prior assaults and the location of those assaults, as of November 6, 2017.

29.     When the School became aware of the Assault on C.P. on November 7, 2017, it first confronted 14-year-old C.P., through its agent, Boss, without C.P.'s parents present.

30.     Boss, acting as the authorized agent of the School in his capacity as Vice Principal of the School, yelled at C.P., interrogated C.P., and shamed C.P., threatening to show her parents video footage of her emerging from the area where she was sexually assaulted by the Assailant.  Boss intimated to C.P. that the Assault was her fault and that she consented to, invited, or welcomed the Assault.

31.    When C.P. insisted that she had been assaulted by the Assailant, despite Boss' assertions and insinuations that C.P. has engaged in sexually inappropriate behavior and was at fault for having been assaulted, Boss contacted a social worker who interviewed C.P. further.

32.    Upon information and belief, when the social worker arrived to interview C.P., Boss reported the incident to McGee, who contacted fourteen-year-old C.P.'s parents for the first time.

33.    C.P.'s parents immediately reported to the school, where they were directed to meet with McGee.

34.    McGee reported to C.P.'s parents that C.P. had been involved in an "incident" at school and that she had been captured on school surveillance going into a room with another student.  After C.P.'s parents pressed McGee for more information, he finally admitted that C.P. had been sexually assaulted on school premises by the Assailant.

35.    C.P.'s parents inquired about what information had been provided to the North Smithfield Police Department and were shocked to learn that no report had been made by the School.  McGee informed C.P.'s parents that they could report the Assault if they wanted to.

36.    When C.P.'s parents indicated to McGee that they were reporting the Assault to the North Smithfield Police Department, McGee expressed agreement with the decision, commenting that the Assailant is "a real dirt bag."

37.    Despite the notice of the Assailant's prior assault(s) and other unlawful activity set forth above, the School, McGee, and Boss failed to take reasonable precautions to protect its student, C.P., from the Assault she suffered at the hands of the Assailant on

November 6, 2017.

38.     Upon information and belief, the School, McGee, and Boss failed to report the Assault to the Department of Children Youth and Families (DCYF) as required by R.I. Gen. Laws § 40-11-13.

39.     The Assailant was arrested by the North Smithfield Police Department on November 7, 2017 for the Assault and was charged with First Degree Child Molestation under R.I.G.L. § 11-3-8.1.

40.     On March 14, 2018, the Assailant pled *no lo contendre* to the felony of Third-Degree Sexual Assault (Statutory Rape) of C.P on November 6, 2017, pursuant to R.I.G.L. § 11-37-6.

41.     At the time of the Assault, the Assailant was eighteen years old.

42.     At the time of the Assault, C.P. was fourteen years old.

43.     As a result of the plea, the Assailant was sentenced to a five-year suspended sentence, five years' probation, and home confinement.  He was ordered by the Rhode Island Superior Court to have no contact with his victim, C.P., and was ordered to register with the State of Rhode Island as a sex offender.

44.     Subsequent to the Assault, the Assailant was dismissed from and/or ceased attending the School.

### *The Bullying*

45.     On November 9, 2017, Michael St. Jean, Superintendent of the Department, emailed all parents, students, and staff of the School ("the Email"), reporting:

>    *The North Smithfield Police posted a press release including the following information.*

> *On November 7, 2017, members of the North Smithfield Police Department arrested a high school student and charged him with one count of first degree child molestation/sexual assault.*

*This alleged incident occurred after the students were released from school. After a report that some students were seen in an unauthorized, non-public part of the building, an internal investigation identified the students. The situation was investigated. School administration immediately contacted the students' parents and the North Smithfield Police. The student in question is no longer in school.*

*We take the safety of our students seriously.*

*Michael St. Jean, Superintendent*

46.     The Email led to speculation among teachers, students, and parents about the identity of the students involved in the incident referenced in the Email.

47.     After the Assault and the Email, C.P. endured numerous incidents of bullying, cyberbullying, and harassment from other students at the School directly related to the Assault, her reporting of the Assault, the Email, and the consequences suffered by the Assailant for assaulting her, which occurred on school grounds.

48.     The incidents of bullying came in the form of verbal abuse inside the school building, abusive comments on social media, direct threats and abusive statements via text message, video recording C.P. at the School by other students, and in the creation and spreading of rumors about C.P. in an organized campaign of humiliating, maligning, and shunning C.P.

49.     Upon information and belief, teacher(s) at the School joined in the bullying campaign by questioning of the veracity of her report of the Assault; besmirching C.P.'s

moral character; and revealing information regarding the Assault and often confidential information regarding C.P., all of which significantly exacerbated the bullying by students.

50.     Upon information and belief, during an eleventh grade field trip, Ms. Gravel, the same teacher who had directed C.P. to stay after school to complete an assignment in the library on the day of the Assault, confirmed speculation by students that C.P. was the victim of the Assault referenced in the Email by commenting, in response to discussion of the criminal charges against the Assailant, that "C.P. is a nice girl, but she just made a bad decision," simultaneously blaming C.P. for the Assault and outing her as the victim of the Assailant, in violation of confidentiality laws and policies.

51.     Another teacher, Julie Durand, banned C.P. from her classroom during the before school morning time, where C.P. had spent most mornings before school prior to the Assault.  Upon information and belief, Ms. Durand banned C.P. from her classroom because she, an adult educator, was embarrassed to be associated with C.P. because other students blamed C.P. for the Assault and the consequences for the Assault imposed upon the Assailant.

52.     The conduct of Ms. Gravel, Ms. Durand, and other teachers who acted in a similar fashion to Ms. Gravel and Ms. Durand, confirmed C.P.'s identity as the victim of the Assault referenced in the Email and reinforced the negative stigma among C.P.'s student peers that she had invited the assault, was to blame for the assault, and caused unfair or inappropriate consequences for the Assailant, exacerbating and enabling the bullying conduct of students directed at C.P.

53.     At all times relevant hereto, the School had a "Code of Student Conduct"

promulgated in accordance with Rhode Island Law that stated, *inter alia*, that "each student has a right to attend a school that is safe and secure . . . and that is free from the threat of physical harm."

54.     At all times relevant hereto, the School had a "Bullying, Teen Dating Violence, and Sexual Assault" Policy that prohibited bullying and sexual assault within the Town schools, and included prohibitions on bullying through the use of technology or electronic communications (so called "cyber-bullying").

55.     On numerous occasions, C.P.'s parents contacted Boss and the School to report the incidents of bullying and abuse suffered by C.P.

56.     Upon information and belief, no disciplinary action was taken by the School or Boss regarding the teachers or students engaged in the campaign of bullying, harassment and abuse, in violation of the School's policies.

57.     The campaign of bullying, harassment, and abuse continued over many months, and despite entreaties from C.P. and her parents, the School and Boss refused to make any effort to stop the campaign of bullying, harassment, and abuse, to discipline the students engaging in such conduct, or to offer support to C.P., a fourteen-year-old student who was sexually assaulted on school premises and was being bullied, harassed, and abused for reporting it.

58.     As a result of the failure to enforce discipline as required by the School's Code of Student Conduct and "Bullying, Teen Dating Violence, and Sexual Assault" Policy, the bullying, harassment, and abuse of C.P. continued and escalated.

59.     As of January 8, 2018, the bullying, harassment, and abuse of C.P. had escalated to a degree that the North Smithfield Police contacted the School to express its

disappointment at the failure to contact police regarding the bullying and to request contact regarding future instances of bullying of C.P.

60.     As a result of the Assault and the subsequent, persistent, daily bullying, harassment, and abuse, C.P. has suffered severe and permanent harm, including but not limited to severe emotional distress, humiliation, a disruption of her ability to enjoy life's pleasures, the destruction of her sense of safety and wellbeing, and has interfered in her ability to enjoy the benefits of the education and educational services provided by the School, all to her detriment.

### *Failure to Educate C.P.*

61.     At all relevant times, C.P. had a 504 Plan to provide additional academic supports and accommodations for diagnosed learning differences.

62.     Following the Assault, the School refused to cooperate with C.P. and her parents in executing her 504 Plan and put forth recommendations to reduce accommodations and supports that were previously available to C.P., despite the significant academic struggles she had following the Assault and in the midst of the disruptive and distracting campaign of bullying directed at her for being sexually assault at school.

63.     C.P. and her parents had numerous communications with the School, administrators, including Boss, guidance counselors, and individual teachers requesting academic support for C.P., whose academic performance declined precipitously following the Assault.

64.     Following the Assault and C.P.'s reporting of the Assault, the School, administrators, and teachers were far less willing to support C.P's academics than before the Assault.

65.     Following the Assault and reporting of the Assault, C.P. was singled out in her classes for discipline or derision for poor academic performance more frequently and with greater consequences than before the Assault and reporting of the Assault.

66.     Following the Assault and reporting of the Assault, C.P. was denied academic accommodations that were made available to other similarly situated students.

67.     Despite the Assault occurring on school premises, during school hours, and being discovered by the School, the School provided no outreach to C.P. or additional emotional or academic supports to C.P., a student known to the School to have just experienced a significant trauma on its grounds; to be experiencing significant bullying and harassment during school hours and connected to the School for having been assaulted and reporting the Assault; and to be struggling academically in the wake of being sexually assaulted at school and bullied for having been assault and reporting the Assault.

68.     As a result of foregoing, C.P. was denied the benefits of the education and educational services offered to her by the Town, causing C.P. to withdraw from the School and to complete her high school education at Woonsocket Career and Technical Center.

**COUNT I**
**Civil Liability**
**42 U.S.C. § 1983**

69.     Plaintiff re-alleges those averments contained in the Paragraphs above as if fully re-stated herein.

70.     The Fourteenth Amendment of the United States Constitution guarantees the right to equal protection under the law.

71.    The Town and Boss, acting under the color of state law, unlawfully deprived C.P. of her right to equal protection under the law.

72.    Boss deprived C.P. of her right to equal protection under the law by failing to take action to remediate the hostile educational environment created by the bullying of C.P.

73.    The Town failed to train and supervise Boss or discipline Boss for his actions against C.P. and thus permitted Boss to violate C.P.'s right to equal protection.

74.    The Town, being aware that Boss was engaged in a course of discriminatory conduct against Plaintiff and failing to train, supervise, and/or discipline Boss in response, acted with deliberate indifference towards the Plaintiff's constitutional rights.

75.    As a result of a conscious policy, practice, custom or usage, the Town has permitted and allowed a violation of C.P.'s rights to equal protection under the law.

76.    As a direct result of the actions of the Town and Boss, Plaintiff has suffered and will continue to suffer financial harm, emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

77.    The actions of Defendants were taken with conscious disregard for the legal rights of C.P.

78.    The actions of Defendants were wicked, wanton, and for the good of society must be punished.

WHEREFORE, C.P. demands judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT II
## State Created Danger
## 42 U.S.C. § 1983

79.    Plaintiff re-alleges those averments contained in the Paragraphs above as if fully re-stated herein.

80.    The Town, Boss, and McGee, acting under the color of state law, affirmatively acted to create and/or enhance a dangerous condition by allowing a student known to have engaged in prior sexual assaults on school grounds to remain on school grounds without appropriate supervision, resulting in the Assault to C.P., and no reasonable educator in the same or similar circumstances could have believed that the conduct of the Town, Boss. Or McGee would not create or enhance the danger posed to C.P.

81.    The Assault of C.P. was the foreseeable result of the dangerous condition created by the Town and Boss, and the Town and Boss acted with deliberate indifference to C.P.'s safety because they actually knew of a substantial risk of serious harm and disregarded that risk.

82.    The Assault of C.P. and resulting injuries to her were directly caused by the dangerous condition created by the Town and Boss, which constitutes a danger specific to C.P. and distinct from the danger to the general public.

83.    There was a special relationship between the Town and Boss and C.P. because C.P. was a minor child entrusted to the supervision, custody, and care of the Town and Boss while on school premises.

84.    The Town and Boss created the dangerous condition that would not otherwise have existed, thereby allowing the Assault of C.P. to occur, causing her injuries.

85.    The actions of Defendants shock the conscience and were taken with conscious

disregard for the legal rights of C.P.

86.    As a direct result of the actions of the Town and Boss, C.P. has suffered and will continue to suffer injury, including financial harm, emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

87.    The actions of Defendants were wicked, wanton, and for the good of society must be punished.

WHEREFORE, Plaintiffs demand judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

### COUNT III
### First Amendment Retaliation
### 42 U.S.C. § 1983

88.    Plaintiff re-alleges those averments contained in the Paragraphs above as if fully re-stated herein.

89.    The First Amendment of the United States Constitution guarantees the right to petition for redress of grievances.

90.    Plaintiff C.P. exercised her right to petition for redress of her grievances by reporting the Assault and participating in the prosecution of the Assailant for assaulting her.

91.    The Town and Boss, acting under the color of state law, unlawfully retaliated against Plaintiff C.P. for having exercised her right to petition for redress of grievances.

92.    Boss' retaliation took the form of failing to take action to remediate a hostile educational environment for C.P.

93.    The Town failed to train, supervise, and discipline Boss and other teachers for

their actions against C.P., and thus permitted Boss and certain teachers to be in a position to violate the C.P.'s constitutional rights.

94.     The Town, being aware that Boss and certain teachers were engaged in a course of retaliatory conduct against C.P. and failing to train, supervise, and discipline Boss in response, acted with deliberate indifference towards the C.P.'s constitutional rights.

95.     As a result of a conscious policy, practice, custom or usage, the Town has permitted and allowed for harassment based upon C.P.'s exercise of her First Amendment rights.

96.     As a direct result of the actions of the Town and Boss, C.P. has suffered and will continue to suffer financial harm, emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

97.     The actions of Defendants were taken with conscious disregard for the legal rights of C.P.

98.     The actions of Defendants were wicked, wanton, and for the good of society must be punished.

        WHEREFORE, Plaintiff C.P. demands judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

**COUNT IV**
**Violation of Title IX**
**Deliberate Indifference to Sex/Gender Discrimination**
**20  U.S.C. §§ 1681, *et seq.***

99.     Plaintiff re-alleges those averments contained in the Paragraphs above as if fully re-stated herein.

100.    C.P. alleges violations of Title IX against the Town due to its deliberate indifference to sex/gender-based discrimination.

101.    The Town and its Department, the School Department, which operates the School, receives federal funds and is thus covered by Title IX's prohibition on sex/gender-based discrimination.

102.    The Town created and/or subjected C.P. to a hostile educational environment in violation of Title IX because:

    a.      As a female student seeking equal access to educational programs and activities at the School, C.P. was a member of a protected class covered by Title IX;

    b.      C.P. was subjected to sex/gender-based discrimination in the form of the Assault;

    c.      C.P. was subjected to harassment based on her sex; and

    d.      C.P. was subjected to a hostile educational environment created by the Town's lack of policies and procedures, failure to enforce existing policies and procedures, and failure to properly investigate and/or address the Assault and harassment perpetrated on C.P.

103.    At all relevant times, the Town, and its Department, the School Department, which operates the School, exercised substantial control over the Assailant who, at all relevant times, was a student enrolled at the School.

104.    The School had actual knowledge of the sex/gender-based discrimination, which was created and furthered by its repeated failure to adequately respond to C.P.'s allegations of sex/gender-based discrimination in violation of the Town's own policies

and federal law and guidance.

105.    The Town acted with deliberate indifference to the Assault by failing to take immediate, effective remedial steps to resolve C.P.'s allegations of sex/gender-based discrimination.

106.    The Town's repeated failure to promptly and appropriately respond to the Assault of C.P. resulted in her exclusion, on the basis of her sex, from participation in, being denied the benefits of, and being subjected to discrimination in Town's educational programs and activities in violation of Title IX.

107.    The Town acted intentionally and with deliberate indifference to the repeated denial of the Plaintiff's access to educational opportunities or benefits. The Town's violation of its duty to C.P. arises from its systemic failure to properly enforce Title IX. Contrary to its own policies, the Town cultivated a culture of silence by failing to report complaints of sex/gender-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure students who were subject to sexual assault and harassment had equal access to educational opportunities and benefits or grievance procedures.

108.    The Title IX failures by the Town were so severe, pervasive, and objectively offensive that C.P. was denied equal access to the Town's educational opportunities and benefits, as she was unable to complete her high school education at the School due to the hostile environment created and permitted by the Town as a result of the Assault and her reporting of the Assault.

        WHEREFORE, Plaintiff C.P. demands judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees

and costs in an amount sufficient to confer jurisdiction upon this Court.

**COUNT V**
**Violation of Title IX**
**Hostile Environment**
**20 U.S.C. §§ 1681, et seq.**

109.    Plaintiff re-alleges those averments contained in the Paragraphs above as if fully re-stated herein.

110.    C.P. alleges violations of Title IX against the Town due to the hostile environment created at the School, the Town and its Department, the School Department, which operates the School, receives federal funds and is thus covered by Title IX's prohibition on sex/gender-based discrimination.

111.    As a female student seeking equal access to educational opportunities and benefits at the School, C.P. was a member of a protected class covered by Title IX.

112.    The Assault and subsequent harassment, humiliation and abuse suffered by C.P. described previously in this Complaint, perpetuated by the Town's employees and students at the School, created an abusive and sexually hostile educational environment at the School that impeded and effectively denied C.P.'s equal access to educational opportunities and benefits.

113.    The Assault on C.P. and the ongoing retaliation she received from the Town, through its administrators and teachers, including Boss, and students at the School over which the School had substantial control were so severe, pervasive, and objectively offensive that C.P. was denied equal access to the Town's educational opportunities and benefits, as she was unable to complete her high school education at the School due to the hostile environment created and permitted by the Town as a result of the Assault and her reporting of the Assault.

114.    The Town is liable for the abusive and hostile educational environment at the School because it had actual knowledge of Assault by the Assailant constituting an extreme act of sex/gender-based discrimination against C.P. and also permitted the campaign of bullying, harassment, and abuse by students and teacher(s) of the School to continue as a result of C.P.'s decision to report the Assault.

115.    The Town also is liable for its failure to remedy the hostile educational environment experienced by C.P. by failing to offer Plaintiff appropriate interim support measures and  accommodations that could have provided C.P. with equal access to educational opportunities and benefits and by failing to discipline and prevent bullying, harassment, and abuse by students and teacher(s) of the School.

116.    The Town also is liable for its failure to remedy the hostile educational environment by failing to initiate and conduct proper investigations into the Title IX violations that C.P. suffered and provide appropriate follow-up support to C.P., thus ensuring that she received equal access to educational opportunities and benefits.

117.    The Town failed to conduct fair, equitable, unbiased, and thorough investigations into C.P.'s report of the Assault and the prior report(s) of sexual assaults by the Assailant; failed to hold students and employees accountable for their acts of sexual misconduct and discrimination; and failed to remedy the hostile environment that was created as a result of the sex/gender-based discrimination.

118.    This hostile environment perpetuated by the Town was so severe, pervasive, and objectively offensive that C.P. was denied equal access to the Town's educational opportunities and benefits, as she was unable to complete her high school education at the School due to the hostile environment created and permitted by the Town as a result

of the Assault and her reporting of the Assault.

119.    As a direct, natural, and proximate result of the Town's violation of Title IX by creating and perpetuating a sexually hostile environment, C.P. has suffered actual damages including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, loss of educational benefits, loss of income, and other economic and non-economic damages.

WHEREFORE, C.P. demands judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

**COUNT VI**
**Violation of the Rhode Island Civil Rights Act**
**R.I. Gen. Laws § 42-112-1,** *et seq.*

120.    Plaintiff re-alleges those averments contained in the Paragraphs above as if fully re-stated herein.

121.    Rhode Island Gen. Laws § 42-112-1 *et seq*. states, in pertinent part:

All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

122.    C.P. is a female and is a member of a protected class based upon her sex covered by R.I.G.L. § 42-112-1 *et seq*.

123.    Defendants, by their individual and concerted acts and omissions, including, but

not limited to, those described herein, discriminated against C.P. based upon her sex by subjecting her to a hostile educational environment due to her being the victim of and reporting a sexual assault perpetrated against her, a female, by a male student.

124.    Defendants' actions were outrageous, wicked and wanton, and for the good of society must be punished.

WHEREFORE, C.P. demands judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT VII
### Intentional Inflection of Emotion Distress

125.    Plaintiff re-alleges those averments contained in the Paragraphs above as if fully re-stated herein.

126.    C.P. alleges intentional infliction of emotional distress by the Town and Boss in their response, or lack of response, to the Assailant and C.P.'s report of the Assault.

127.    The Town and Boss engaged in extreme and outrageous conduct and specifically intended for its conduct to cause C.P. to suffer severe emotional distress.

128.    As a result the Town's and Boss' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, including, but not limited to depression, anxiety, post-traumatic stress  disorder, and other such injuries and physical manifestations as may appear during the course of  discovery and trial in this matter.

129.    As a direct, natural, and proximate result of the Town's and Boss' intentional infliction of  emotional distress, C.P. has suffered actual damages including, but not limited to, medical  expenses associated with mental and physical health treatment, inconvenience, insult, mental  distress, humiliation, physical assault, anxiety, emotional

and physical pain and suffering, a denial of access to educational benefit, loss of educational benefits, loss of income, and other economic and non-economic damages.

WHEREFORE, C.P. demands judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

### COUNT VIII
### Common Law Negligence

130. Plaintiff re-alleges those averments contained in the Paragraphs above as if fully re-stated herein.

131. Boss had a special relationship with C.P. as the Vice Principal of the School, and therefore, had a duty to use reasonable care in the supervision, custody, care and/or education of C.P. under state and federal law.

132. The Town had a special relationship with C.P. as the Vice Principal of the School, and therefore, had a duty to use reasonable care in the supervision, custody, care and/or education of C.P. under state and federal law.

133. Boss breached his duty by failing to take reasonable actions to prevent C.P. being assaulted by a student known for previously sexually assaulting other female student; and by failing to remediate the hostile educational environment caused by the bullying that arose out of C.P.'s report of the assault.

134. Defendant Town breached its duty when it failed to train, supervise, or discipline Defendant Boss, staff, and other students and otherwise prevent the Assailant and the bullying that arose out of the assault.

135. As a direct result of the actions of the Town and Boss, C.P. has suffered and will continue to suffer financial harm, emotional distress, personal inconvenience, worry, loss

of enjoyment of life, and other non-pecuniary losses.

136.     The actions of Defendants were taken with conscious disregard for the legal rights of C.P.

137.     The actions of Defendants were wicked, wanton, and for the good of society must be punished.

WHEREFORE, C.P. demands judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT IX
## Negligent Supervision

138.     Plaintiff re-alleges those averments contained in the Paragraphs above as if fully re-stated herein.

139.     C.P. alleges negligent supervision by the Town. The Town had a duty to properly supervise, train, and monitor its employees and students and to ensure those employees' and students' compliance with all applicable statutes, laws, regulations, and policies, but they failed to do so and therefore breached the duty of care owed to C.P. as alleged herein.

140.     The Town's failure to timely report and investigate the assault to investigate prior allegations of sexual assault by the Assailant on school premises; or to warn students and their parents of sexual assaults on school premises, generally, or perpetrated by the Assailant, specifically, is a breach of its duty to supervise.

141.     As a direct and proximate cause of the Town's conduct, actions, and/or inactions C.P. has sustained injuries and damages, including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental

distress,  embarrassment, humiliation, physical assault, anxiety, emotional pain and suffering, a denial of  access to educational benefit, loss of educational benefit, loss of income and other economic and  non-economic damages, and other such injuries and physical manifestations as may appear during the course of discovery and trial in this matter, for which she is entitled to just compensation.

WHEREFORE, C.P. demands judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## PRAYER FOR RELIEF

Based upon the foregoing, C.P. prays for judgment against Defendants as follows:

A.      An award of damages to C.P., including compensatory statutory damages and punitive damages;

B.      An award of litigation costs and expenses, including reasonable attorneys' fees to the Plaintiff;

C.      For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;

D.       Injunctive relief; *and*

E.       All such additional and/or further relief as this Court deems just and equitable under the circumstances.

## JURY TRIAL DEMAND

**Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demand a jury trial on all counts so triable; Joshua E. Carlin, Esq., and Mary W. McBurney, Esq., are designated as trial counsel.**

Respectfully Submitted,


/s/ Mary Welsh McBurney
Joshua E. Carlin, Esq. (#6192)
Mary Welsh McBurney, Esq. (#7673)
HANSON CURRAN LLP
One Turks Head Place, Suite 550
Providence, RI 02903
Telephone: (401) 421-2154
Fax: (401) 521-7040
Email:  jec@hansoncurran.com
Email: mwm@hansoncurran.com